UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| BRIAN JONES, | ) |
| | ) |
| Plaintiff, | ) |
|     v. | )   13-CV-3196 |
| | ) |
| TRINA PEED, et al., | ) |
| | ) |
| Defendants. | ) |

**OPINION DENYING SUMMARY JUDGMENT
WITH LEAVE TO RENEW**

Plaintiff, proceeding pro se from his incarceration in Stateville Correctional Center, pursues claims arising from his seven-month incarceration in Hill Correctional Center in 2012. In particular, he claims that the "brunch program"—the serving of two daily meals instead of three—violated his Eighth Amendment rights. He also claims retaliation for his filing of grievances and making complaints.

Defendants move for summary judgment on all claims except for the retaliation claim against Defendant Peed, the librarian at Hill Correctional Center. Summary judgment may be warranted if a proper record is made, but Defendants' motion leaves too many

questions unanswered. Therefore, summary judgment will be denied with leave to renew.

I. **Brunch Claim against Defendants Yurkovich, Griswold, and Godinez**

Plaintiff was transferred to Hill Correctional Center (Hill) in April 2012. Once there, he learned that Hill had instituted a pilot program called the "brunch program," whereby inmates were fed two meals per day, rather than three. This pilot program was also instituted in other prisons, or at least in Pinckneyville Correctional Center. *See* Haywood v. Godinez, 2015 WL 3475449 (S.D. Ill.)(denying preliminary injunction to stop brunch program in Pinckneyville Correctional Center, which had been in place for three years); Johnson v. Shah, 2016 WL 844689 (S.D. Ill.)(claim challenging brunch program at Pinckneyville Correctional Center survived merit review). Defendants Yurkovich and Godinez maintain that they were not personally responsible for the program, but an inference arises from their positions as Warden and IDOC Director that they at least approved of the program and the manner in which the program was implemented.

Defendant Yurkovich, the Warden, avers that the pilot program improved safety by reducing the need to move and congregate large numbers of inmates during the breakfast meal, which was served while still dark.  Yurkovich implies that he expected fewer fights in the cafeteria as a result of the brunch program, but he does not say whether fewer fights actually occurred.  He avers that costs savings were unclear, but he does not explain what information he considered in reaching this conclusion.  (Yurkovich Aff. para. 7, d/e 109-3.)  The reason behind the implementation of the program is arguably relevant to Defendants' state of mind, and both the affidavits of Yurkovich and Godinez are too conclusory regarding why they thought the program would save money or increase safety or whether the program actually accomplished those goals.

Defendant Griswold Bailey, a registered and licensed dietician and the Food Service Administrator for IDOC, devised a master menu for the brunch program which she avers provided daily about "2400 calories and 8 ounces of protein and at least a combination of 5 fruit or vegetable choices a day."  (Bailey Aff. para. 8, d/e 109-2.)  This is similar to the three meal plan, which, according to

Defendant Bailey, provides 2300-2500 calories and 8 ounces of protein daily.  (Bailey Aff. para. 4.)  Different menus were available for inmates with medical conditions, if ordered by doctors or dentists, but there is no information on whether Plaintiff had a condition requiring three meals instead of two.  (Bailey Aff. para. 10.)  Bailey does not attach the master menu she devised for the brunch program at Hill.  Instead, she attaches the 2014 and 2015 master menus for the three meal plan, which are not relevant.

     The pilot program was supposed to end in June 2012, but the program continued for Plaintiff's entire 7-month stay at Hill, until he was transferred to Stateville Correctional Center.  The first meal was generally served between 8:00 and 10:00 a.m., and the second meal was served between 3:30 and 5:00 p.m.  This typically meant that Plaintiff had to wait 16-18 hours after dinner until brunch the next day.  (Pl.'s Dep. p. 17.)  Plaintiff purportedly was able to purchase food from the commissary about once a month (Pl.'s Dep. pp. 24-25), but Defendants do not attach Plaintiff's commissary purchases.

     Plaintiff does not dispute that the two meals would have satiated him if the meals had truly contained comparable calories

and nutrition to the three-meal plan. (Pl.'s Dep. p. 14.) However, he testified that his "brunch" meal was usually the regular lunch tray with one breakfast item added, such as a small amount of cereal with milk, which in his estimation would not make up for the calories lost from missing breakfast. (Pl.'s Dep. pp. 13-14.) He testified that he suffered stomach and hunger pains and sometimes dizziness. (Pl.'s Dep. p. 15)("I suffered stomach pains, hunger pains all night long man . . . I had stomach pains, you know, and dizziness, things like that, you know.") However, he does not dispute that his weight remained stable the entire time (between 282 and 286 pounds), and he does not contend that he suffered any adverse health consequences. (Pl.'s Med. Records, Defs. Ex. O, d/e 109-3.) Plaintiff does seem to assert that he has diabetes and was taking high blood pressure medication. (Pl.'s Resp. p. 3, d/e 114). However, Plaintiff offers no medical records which suggest that he actually had diabetes and the medical records provided by Defendants reflect normal blood pressure readings. (Defs. Ex. O, d/e 109-3.)

     Generally, the Eighth Amendment requires that prisons provide nutritionally and calorically adequate food to sustain

health.  Smith v. Dart 803 F.3d 304, 312 (7th Cir. 2015)(*quoting* French v. Owens, 777 F.2d 1250, 1255 (7th Cir.1985)("The Constitution mandates that prison officials provide inmates with 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it.'")

The Court cannot tell on this record how much food Plaintiff received or whether Plaintiff was harmed by the brunch program.  Even if the meals provided to Plaintiff did contain insufficient calories, Plaintiff maintained his weight of over 280 pounds during the entire seven-month period he was at Hill.  He had to be eating more than enough calories in order to maintain that weight, whether the calories came from the meals provided or from his commissary purchases.  Further, Defendants make a good point with their qualified immunity argument.  *See* Hall v. Sutton, 581 Fed.Appx. 580 (7th Cir. 2014)(not published in Fed. Rptr.)(affirming qualified immunity regarding claim that two-meal plan at Pinckneyville burdened an inmate's religious rights).

On the other hand, Defendants' motion for summary judgment is lacking in facts essential to granting summary judgment or to

determining whether they are entitled to qualified immunity. The Court at least needs to know what food was served while Plaintiff was at Hill. That is, the Court needs the actual meal plan at Hill during 2012, the amount of calories for each meal, and an affidavit from someone with personal knowledge as to whether that meal plan was followed, and, if not, what substitutions were made. Given that this was a pilot program for study purposes, this information should be available. Plaintiff's commissary purchases and an affidavit from the prison doctor during the relevant time are also necessary. The prison doctor needs to identify Plaintiff's medical conditions during the relevant time and address whether Plaintiff had any medical conditions which contraindicated a two-meal daily diet, attaching Plaintiff's medical records from Plaintiff's incarceration at Hill during 2012.

In short, summary judgment for Defendants on this claim may be warranted, but not on Defendants' present motion. The Court has an independent duty to ensure that justiciable issues exist for the jury. Accordingly, Defendants will be directed to renew their motion for summary judgment on this claim.

## II. Retaliation Claims Against Defendants Peed (a/k/a Conner), Collins, Genisio, Keithley, King, and McLaughlin

The record shows that Plaintiff and the librarian at Hill, Defendant Peed (now Conner), volleyed accusations against each other during Plaintiff's incarceration there. Plaintiff filed grievances against Peed accusing her of retaliation and making sexual and racist comments to Plaintiff. Peed filed disciplinary or incident reports accusing Plaintiff of insolence, misbehaving in the library, and making false accusations against her. Peed does not move for summary judgment, but Collins, Keithley, King, McLaughlin, and Yurkovich do.

Plaintiff filed a grievance against Defendant Peed on September 2, 2012, accusing Peed of making "racial slurs and verbal sexual slurs" toward Plaintiff. (9/2/12 grievance, d/e 114-5, p. 14.) Plaintiff accused Peed of saying, "Nigger, I don't care who you report me to, I run this law library. You can suck my pussy." Id. Plaintiff stated in his grievance that he feared for his life and safety and asked to be transferred to Danville, Illinois River, or Stateville. Id. Defendants Keithley and McLaughlin put Plaintiff in

segregation, ostensibly for Plaintiff's protection, but Plaintiff maintains that the segregation was akin to disciplinary segregation.

Defendant Peed responded to Plaintiff's accusations by writing a disciplinary report against Plaintiff, accusing Plaintiff of making false accusations. (10/16/12 disciplinary report, d/e 109-1, p. 83). Instead of holding a hearing, Defendants Collins and King expunged the ticket 15 days later for the stated reason: "Ticket expunged due to not being heard within the 14 day commission of the offenses." (10/31/12 Report, d/e 109-1, p. 84.) Plaintiff maintains that this was a suspect approach to handling the disciplinary report, done either to facilitate Peed's alleged retaliation against Plaintiff or to protect Peed from getting into trouble. Plaintiff maintains that the witnesses he wished to call at the disciplinary hearing would have corroborated Plaintiff's version and showed that Peed was lying. Even though Peed's ticket was expunged, Plaintiff was transferred to Stateville Correctional Center, which, according to Plaintiff, is a maximum security prison, whereas Hill is a medium security prison. Plaintiff admits that Stateville was one of his requested transferee prisons, but he

clarified in his deposition that he only wanted to be transferred to Stateville if he were placed in protective custody, which he was not.

Plaintiff's retaliations claims have some problems. For example, regardless of who was lying or retaliating, a legitimate reason appears to support Plaintiff's transfer from Hill Correctional Center. The interactions between Plaintiff and Peed were becoming increasingly toxic, and they could not avoid each other since Peed was the librarian.

Defendants' motion for summary judgment also has problems. Primarily, Defendants offer no affidavits.[1] The Court has no idea what their testimony would be regarding the reasons for their actions or who was responsible for those actions. A retaliation claim cannot be analyzed without information about Defendants' motive, the reasons underlying their adverse actions, and their response to Plaintiff's allegations. Like the brunch claim, summary judgment may be warranted for some of these Defendants, but not on this motion.

While the Court waits on the renewed summary judgment motions, this case will be referred for settlement. Even if Plaintiff

---

[1] Yurkovich does offer an affidavit but addresses only the brunch program.

were to prevail at trial on any of his claims, he could only recover $1.00 in compensatory damages, since he suffered no physical injury. 42 U.S.C. § 1997e(e). As Plaintiff knows, juries are unlikely to award more than small damages on these kinds of claims. *See* Jones v. Olson, 14-CV-3068 (awarding Plaintiff $152.00 on retaliation, deliberate indifference, and Rehabilitation Act claims).

**IT IS ORDERED:**

> **1) Defendants' motion for summary [108] is denied, with leave to renew in accordance with this opinion. Defendants' renewed summary judgment motion is due April 15, 2016.**
>
> **2) This case is referred to Magistrate Judge Schanzle-Haskins for settlement discussions.**
>
> **3) The final pretrial is scheduled for August 2, 2016, at 10:00 a.m. Counsel shall appear in person. Plaintiff shall appear by video.**
>
> **4) The jury selection and trial are scheduled for August 30, 2016, at 9:00 a.m.**

5) **The clerk is directed to issue a video writ to secure Plaintiff's video presence at the final pretrial conference on August 2, 2016, at 10:00 a.m.**

6) **The clerk is directed to issue a trial writ to secure Plaintiff's personal presence at the jury selection and trial on August 30, 2016, at 9:00 a.m.**

7) **The clerk is directed to notify Magistrate Judge Schanzle-Haskins of the referral for settlement talks.**

ENTERED:    March 24, 2016.

FOR THE COURT:

*s/ Sue E. Myerscough*
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE